IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REGINA RAUB,<br>        Plaintiff,<br><br>v.<br><br>US AIRWAYS, INC., and<br>UNITED STATES OF AMERICA,<br>        Defendants. | CIVIL ACTION<br><br><br><br>NO. 16-1975 |

DuBois, J.                                                                                          November 7, 2017

**MEMORANDUM**

## I.      INTRODUCTION

Plaintiff Regina Raub brought this action seeking damages for injuries allegedly sustained during a US Airways flight as a result of unexpected turbulence. *See* Pl.'s Memo in Opp. to Def.'s Mot. for Sanctions at 6 (Document No. 55, filed Aug. 11, 2017). Presently before the Court is defendant US Airways' Motion for Sanctions for Plaintiff's Counsel's Violations of Rules of Professional Conduct 4.1 and 4.2. ("Motion for Sanctions"). For the reasons that follow, the motion is denied.

## II.     BACKGROUND

Plaintiff filed an Amended Complaint on October 25, 2016, for injuries sustained during US Airways Flight 815 travelling from Cancun, Mexico, to Philadelphia, Pennsylvania, when the flight encountered unexpected turbulence, asserting that US Airways is liable under the Montreal Convention.[1] First Am. Compl. (Document No. 19). Plaintiff alleges that US Airways owed passengers a duty to ensure their safety during the flight, which included a duty to inspect

---

[1] The Montreal Convention "provides the exclusive means to impose liability upon an airline for bodily injury suffered by a passenger while on board an aircraft on an international flight." *Schaefer-Condulmari v. U.S. Airways Group, Inc.*, No. 09-CV-1146, 2009 WL 4729882 (E.D. Pa. Dec. 8, 2009).

1

aircraft equipment and seatbelts and to avoid areas of high turbulence. *See id.* ¶¶ 41–51. In that complaint, plaintiff also asserted claims against the United States of America, through the Federal Aviation Administration ("FAA"), for negligence based on alleged failure to detect and warn US Airways of the turbulence. *See* First Am. Compl. at ¶ 52.[2]

On July 28, 2017, US Airways filed the pending Motion for Sanctions, alleging that plaintiff's attorney, Alisa Brodkowitz, engaged in *ex parte* communications with two US Airways flight attendants in violation of Pennsylvania Rule of Professional Conduct 4.2, which prohibits a lawyer from communicating "about the subject matter of the representation with a person the lawyer knows to be represented by another lawyer in the matter" without prior authorization.[3] Pa. R.P.C. 4.2. US Airways further alleges that, during the course of these communications, Brodkowitz made misleading statements in violation of Pennsylvania Rule of Professional Conduct 4.1, which provides that a lawyer shall not knowingly "make a false statement of material fact or law to a third person." Pa. R.P.C. 4.1.

In its motion, US Airways asked the Court to: (1) revoke Brodkowitz's *pro hac vice* admission; (2) require Brodkowitz to produce any information obtained during her communications with the flight attendants; (3) prohibit the use of any information or evidence

---

[2] Plaintiff alleges that the FAA is liable for: (a) failure to provide required advisories; (b) failure to ensure that air traffic controllers provide this required information to pilots; (c) failure to adequately train the air traffic controller; (d) permitting an airplane carrying hundreds of passengers to enter an area of severe turbulence; (e) violating governmental statues, regulations and requirements including . . . Federal Aviation Administration Order 71100; (f) failure to comply with Defendant's own safety, operating , and other rules, procedures and regulations; (g) allowing improperly trained and unqualified personnel to provide services to US Airways flight crew in question; (h) failing to give warnings not specified in FAA air traffic control manuals; (i) failing to provide certain accurate information prior to takeoff and during the flight, including but not limited to weather conditions, forecasts and additional information that may affect the safety of the flight, including clear air turbulence. First Am. Compl. at ¶ 52.

[3] The communications occurred prior to plaintiff's filing of the original Complaint. In the original Complaint filed on April 26, 2016, plaintiff asserted negligence claims against US Airways for: failure to detect precipitation using onboard radar; failure to request deviations to avoid the injury-causing event; failure to adequately train the flight crew; permitting an airline carrying hundreds of passengers to enter an area of severe turbulence; violating governmental statutes, regulations, and requirements; failure to comply with defendant's safety, operating, and other rules, procedures and regulations; allowing improperly trained and unqualified personnel to transport passengers; failing to regularly inspect and maintain the subject aircraft, specifically the seatbelts. Compl. at ¶ 46. Plaintiff also sought punitive damages for "Outrageous Conduct." Compl. ¶¶ 52–60.

obtained during her communications with the flight attendants at trial; and (4) require plaintiff's counsel to reimburse US Airways for reasonable attorneys' fees and expenses incurred in connection with its motion. *See* Mot. for Sanctions at 17.

On October 18, 2017, US Airways stipulated to liability in this case. Stipulation Regarding Defs.' Election Not to Contest Liability (Document No. 67). As a consequence of the stipulation, US Airways now seeks as a sanction only revocation of Brodkowitz's *pro hac vice* admission.

### III. APPLICABLE LAW

The United States District Court for the Eastern District of Pennsylvania has adopted and enforces Pennsylvania's Rules of Professional Conduct. *Belote v. Maritrans Operating Partners, L.P.*, 97-CV-3993, 1998 WL 136523, at *1782 (E.D. Pa. Mar. 20, 1998); E.D. Pa. Local R. 83.6 (1995).

Courts have "*inherent* authority to impose sanctions upon those who would abuse the judicial process." *Republic of the Philippines v. Westinghouse Elec.*, 43 F.3d 65, 73 (3d Cir. 1994) (emphasis in original) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991)). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. In imposing sanctions, the United States Court of Appeals for the Third Circuit requires that district courts tailor the sanction to appropriately address the harm identified. *Republic of the Philippines*, 43 F.3d at 74. First, the court must examine the conduct at issue and explain why a sanction is warranted. *See id.* (directing courts to consider patterns of wrongdoing; the severity of the infraction; and the level of harm or prejudice to the adversary). Next, the court must consider the range of available sanctions and explain why the particular sanction chosen is appropriate. *Id.*

An attorney from one state who is regularly admitted and licensed to practice therein may be "admitted to a particular jurisdiction . . . for the purpose of conducting a particular case." *Gsell v. Rubin and Yates, LLC*, 41 F.Supp.3d 443, 445 n.3 (E.D. Pa. 2014) (quoting BLACK'S LAW DICTIONARY (9th ed. 2009)). "[T]he rights and duties of an outside lawyer, once so admitted, appear to be the same as those of a local lawyer." *Cooper v. Hutchinson,* 184 F.2d 119, 123 (3d Cir. 1950). Accordingly, a violation of disciplinary standards applicable to members of the bar may justify revocation of *pro hac vice* admission. *Eagan by Keith v. Jackson*, 855 F. Supp. 765, 791 (E.D. Pa. 1994) (citing *Johnson v. Trueblood*, 629 F.2d 302, 304 (3d Cir. 1980)).

If a court determines that revocation of *pro hac vice* admission is an appropriate sanction, counsel must be provided with "notice of the conduct placing his or her *pro hac vice* status at risk, notice of the standard the . . . court will apply in deciding whether to revoke that status, an opportunity to respond, and written reasons for any revocation." *Eagan by Keith v. Jackson*, 855 F. Supp. at 791 (citing *Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 910 (3d Cir. 1992)). "While it is indeed true that admission *pro hac vice* is a privilege, not a right, revocation of that privilege, once bestowed, sends a strong message which works a lasting hardship on an attorney's reputation." *Mruz v. Caring, Inc.*, 166 F.Supp.2d 61, 70 (D.N.J. 2001) (citation omitted). Accordingly, disqualification is an " 'extreme sanction' that should not be imposed lightly." *Regional Employers' Assur. Leagues Voluntary Employees' Beneficiary Ass'n Trust v. Castellano*, No. 03-CV-6903, 2009 WL 1911671, at *2 (E.D. Pa. July 1, 2009) (quoting *Shade v. Great Lakes Dredge & Dock Co.*, 72 F.Supp.2d 518, 520 (E.D. Pa. 1999)).

To prevail on a motion to disqualify counsel, the movant bears the burden of establishing that a particular sanction is warranted. *Marino v. Usher*, No. 11-CV-6811, 2014 WL 2116114, at

4

*6 (E.D. Pa. 2014). In deciding a motion for disqualification, "the court must consider the client's right to be represented by the counsel of his choice, as well as the opposing party's right to prepare and try its case without prejudice." *See University Patents, Inc. v. Kligman,* 737 F.Supp. 325, 329 (E.D. Pa.1990) (citing *Plunto v. Wallenstein,* No. 84-CV-1854, 1986 WL 15007, at *3 (E.D. Pa. Dec. 31, 1986) (declining to disqualify plaintiff's counsel because defendant suffered no prejudice)).

IV. ANALYSIS

   a. Pennsylvania Rule of Professional Conduct 4.2

The Court must first determine whether the flight attendants are represented parties within the scope of Rule 4.2. Rule 4.2 provides that "[i]n representing a client, a lawyer shall not communicate about the subject matter of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Pa. R.P.C. 4.2. Comment 7 to the rule addresses represented organizations:

> In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or had authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. Pa. R.P.C. 4.2, cmt. 7.

The parties do not dispute that *ex parte* contact with the two flight attendants took place; instead, the dispute involves whether the flight attendants were represented parties with whom communication was prohibited under Rule 4.2. This Court must therefore determine whether the flight attendants falls within one or more of the prohibited groups identified in Comment 7: (1) persons who "supervise, direct or regularly consult with the organization's lawyers concerning the matter"; (2) persons who "had authority to obligate the organization with respect

5

to the matter"; or (3) persons "whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." Pa. R.P.C. 4.2, cmt.7.

US Airways does not argue that the flight attendants supervise, direct, or regularly consult with its lawyers and thus the Court need not address this provision. The question, then, is whether the flight attendants are "constitutent[s] of the organization who . . . had authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." *Id.*

                i.    *Authority to Obligate US Airways With Respect to the Matter*

US Airways argues that the flight attendants have the authority to obligate the organization, because their statements could be used as admissions against the organization under Fed.R.Evid. 801(d)(2)(D). Mot. for Sanctions at 11. On this issue, Brodkowitz urges the Court to recognize that "the Pennsylvania rules of Professional Conduct and Comments no longer limit contact with an employee merely because the employee can provide an evidentiary admission." Pl.'s Memo in Opp. to Def.'s Mot. for Sanctions at 13. Instead, she argues that only those employees with "speaking" authority may obligate the organization with respect to the matter. *Id.* at 16.

The official Commentary to Pennsylvania Rule 4.2 was amended in 2004 to reflect changes made to the official Commentary to the Model Rules of Professional Conduct. *See The Disciplinary Board of the Supreme Court of Pennsylvania*, PADISCIPLINARYBOARD.ORG, http://www.padisciplinaryboard.org:7080/newsroom/rules/2005/0302.php. Prior to the amendment, Comment 7 to Rule 4.2 of both the Pennsylvania Rule and the Model Rule classified represented parties as those "having managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter

6

may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization." Pa. R.P.C., cmt. (1988); MODEL RULES OF PROF'L CONDUCT r. 4.2 cmt. 7 (2000). According to the American Bar Association, the amendment deleted from Comment 7 the language which classified represented parties as those "whose statement may constitute an admission on the part of an organization" "to remove the prohibition on communications with anyone 'whose statements may constitute an admission on behalf of an organization' because that prohibition was 'broad and potentially open-ended' and 'had been read to prohibit communication with anyone whose testimony would be admissible against the organization as an exception to the hearsay rule.'" *Paris v. Union Pacific R. Co.*, 450 F.Supp.2d 913, 915 (E.D. Ak. 2006) (quoting AM. BAR ASS'N, ANNOTATED MODEL RULES OF PROF.'L CONDUCT 4.2) (5th ed. 2003)).

"The Comments are intended as guides to interpretation, but the text of each Rule is authoritative," and the rule itself was not amended. *State Adoption of the ABA Model Rules of Professional Conduct and Comments*, ABA CPR POLICY IMPLEMENTATION COMMITTEE (May 23, 2011), https://www.americanbar.org/content/dam/aba/administrative/professional_ responsibility/pic_migrated/comments. authcheckdam.pdf . Accordingly, notwithstanding this amendment to Comment 7 to Rule 4.2, courts in the Third Circuit have continued to rely on Fed. R. Evid. 801(d)(2)(D) to determine whether an employee has the authority to obligate an organization with respect to the matter. *See e.g., EEOC v. Hora Inc.*, 293 Fed. Appx. 728, *731 (3d Cir. 2007) (relying on Fed. R. Evid. 801(d)(2)(D) to determine whether employee had the authority to obligate organization); *In re Asbestos Products Liability Litigation (No. IV)*, No. 09-CV-70101, 2013 WL 4833839, at *4 (E.D. Pa. 2013) (same); *but cf Mendez v. HOVENSA, LLC*, 49 V.I. 849, 861 (D.V.I. 2008) (relying on agency principles to conclude that statements by an

employee to an attorney only come within the scope of employment if the statements "are admissible in evidence against the principal to prove the truth of facts asserted in them as though made by the principal . . . .").[4] This Court agrees with those cases and looks to Fed. R. Evid. 801(d)(2)(D) to determine whether the flight attendants had the authority to obligate the organization in the instant case.

Under Fed. R. Evid. 801(d)(2)(D), "an admission is a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *Penda Corp. v. STK, L.L.C.*, No. 03-CV-5578, 2004 WL 1628907 (E.D. Pa. July 16, 2004). Although US Airways claims that the subject matter of Brodkowitz's communications with the flight attendants involved matters within the scope of employment—specifically, "their experiences and conduct on the job as flight attendants," Mot. for Sanctions at 12, — US Airways has not provided the Court with evidence of the flight attendants' employment duties. Without a record of the duties of the flight attendants, the Court cannot determine what statements would or would not be within the scope of employment. *See McAdams v. United States*, 297 Fed. Appx. 183, 186 (3d Cir. 2008) (statement not admissible under 801(d)(2)(D) where plaintiff failed to provide evidence that statement was within the scope of employment); *Hughey v. Home Depot USA, Inc.*, 2009 WL 2230717, at *4 (E.D. Pa. July 23, 2009) (same). Moreover, US Airways has provided evidence of the fact of the challenged communications, but not the substance of those communications. Without evidence of the substance of the communications between Brodkowitz and the flight attendants, the Court cannot conclude that the flight attendants were speaking about matters within the scope of their

---

[4] The Court notes that this does little to clarify the appropriate standard under which to determine whether an employee is represented by virtue of his or her ability to obligate the organization.

employment and were represented parties because they had the authority to obligate the corporation with respect to the matter.

> ii. *Persons Whose Acts or Omissions may be Imputed to the US Airways*

The Court turns to whether the flight attendants were represented parties under Rule 4.2 as employees whose acts or omissions in connection with the matter may be imputed to the organization for purposes of civil liability. Brodkowitz argues that because the complaint does not allege negligence on the part of the flight attendants, liability could not be imputed to the corporation. Indeed, "whether a person's conduct 'may be imputed' means something more than a fanciful construct of potential liability, and it must be determined instead by reference to the circumstances of the case." *Curley v. Cumberland Farms*, 134 F.R.D. 77, 88–89 (D.N.J. 1990); *see Berryman v. Consolidated Rail Corp.*, No. 94-CV-3668, 1995 WL 517642 at *2–4 (E.D. Pa. Aug. 28, 1995) (In FELA case, *ex parte* contact violated Rule 4.2 where attorneys interviewed employees alleged to be negligent in providing a safe workplace, whose acts or omissions could be imputed to corporation for purposes of civil liability); *Belote*, 1998 WL 136523 at *1784–85 (in negligence action related to an injury on a barge, *ex parte* communications with captain responsible for barge maintenance was prohibited because liability could be imputed to organization).

According to Brodkowitz, because the complaint does not allege that the flight attendants were negligent or that "the acts or omissions of the flight attendants . . . might otherwise be the basis for imposing liability on US Airways," the flight attendants were not represented parties. Pl.'s Memo in Opp. to Def.'s Mot. to Sanction Pl.'s Counsel at 13. Instead, she argues, the flight attendants were contacted as witnesses, as opposed to negligent actors. *Id.* In a discovery request dated March 22, 2017, however, plaintiff requested information related to US Airways'

9

employment and personnel files on the grounds that "[t]he flight and cabin's [sic] crew's training is at issue, with regard to transport and reporting of the injury causing event following government and or US Airways' own policies and procedures." Mot. for Sanctions, Ex. G.

It is difficult to make a determination with respect to what conduct, if any, of the flight attendants may be imputed to the corporation without any reference to flight attendants' employment duties. *See Carter-Herman v. City of Philadelphia*, 897 F.Supp.899, 903–04 (reviewing employee descriptions to determine whether the individual employees were represented within the scope of Rule 4.2). The Court notes, however, that flight attendants are generally responsible for the safety of passengers in their custody. Statements made by the flight attendants regarding the flight and their acts and omissions during the flight that caused plaintiff's injuries could certainly subject US Airways to liability. Viewing Brodkowitz's communications in light of the circumstances of the case, the Court concludes that the flight attendants were represented parties because they are persons "whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." Pa R.P.C. 4.2, cmt. 7. Thus, Brodkowitz's communications with the flight attendants violated Rule 4.2.

      b. <u>Pennsylvania Rule of Professional Conduct 4.1</u>

US Airways further alleges that Brodkowitz violated Pennsylvania Rule of Professional Conduct 4.1 because she knowingly provided misleading information when she informed the flight attendants that she intended to file a lawsuit against the FAA, but allegedly omitted information regarding her intention to file a lawsuit against US Airways. The Court disagrees.

Rule 4.1 states in relevant part that an attorney shall not knowingly "make a false statement of material fact or law to a third person." Pa. R.P.C. 4.1. A lawyer "generally has no

affirmative duty to inform an opposing party of relevant facts," but "[m]isrepresentations can also occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements." *Id.*, cmt. 1.

US Airways has not provided sufficient evidence that Brodkowitz knowingly made a false statement of material fact to the flight attendants. In her deposition testimony, one flight attendant stated that, although she did not remember the exact substance of the conversation, she "believe[s] at some point, she mentioned a lawsuit" and that she believed Brodkowitz was "focusing on the FAA." Pl.'s Memo in Opp. to Def.'s Mot. to Sanction Pl.'s Counsel, Ex. 9, at 64–65. The second flight attendant with whom Brodkowitz spoke testified at a deposition that Brodkowitz told her she was going to file a lawsuit against the air traffic controllers.[5] Notably, one flight attendant testified that Brodkowitz did inform her that she represented a passenger injured during the flight. *Id.* at 42.

The testimony of the flight attendants provided to the Court is far from complete, and both flight attendants stated that they do not recall the specifics of the conversations. Brodkowitz did intend to, and did indeed, file a lawsuit against the FAA. She also did state to at least one of the flight attendants that she represented a US Airways passenger injured on the flight, thus notifying that flight attendant of the possibility of a lawsuit against US Airways.

Moreover, US Airways failed to provide any evidence that the alleged omitted fact—that Brodkowitz was contemplating filing a lawsuit against US Airways—was material. *See In re Malofiy*, 653 Fed. Appx. 148, 153 (materiality requirement met "because the conduct led to an entry of default judgment") (citing *Office of Disciplinary Counsel v. DiAngelus*, 907 A.2d 452,

---

[5] "I think she said the air traffic controllers." Pl.'s Memo in Opp. to Def.'s Mot. to Sanction Pl.'s Counsel, Ex. 9, at 42.

11

456 (Pa. 2006) (materiality standard met where "violation affected the outcome of the proceedings")). Accordingly, the Court concludes that Brodkowitz did not violate Rule 4.1.

    c. Sanctions

The only sanction that US Airways seeks is revocation of Brodkowitz's *pro hac vice* admission. The Court declines to revoke Brodkowtiz's *pro hac vice* admission.

The Third Circuit has held that disqualification of an attorney is inappropriate if the moving party cannot show that prejudice is so severe as to warrant such a remedy. *See EEOC v. Hora, Inc.*, 293 Fed. Appx., at *731–32 (reversing District Court's disqualification of attorney on the basis of a Rule 4.2 violation as too harsh); *In re Asbestos Products Liability Litigation (No. IV)*, 2013 WL 4833839, at *9–11 (declining to disqualify attorney even where Court determined that attorney intentionally circumvented Rule 4.2 out of frustration over discovery); *University Patents, Inc.*, 737 F.Supp. at 329 ("There is not sufficient evidence . . . to conclude that plaintiff has been so severely prejudiced that the "draconian" measure of disqualification is required at this time.").

US Airways failed to provide any evidence of prejudice resulting from Brodkowitz's communications with the two flight attendants. US Airways has stipulated to liability; evidence presented will thus be limited to damages. *See* Stipulation Regarding Defs.' Election Not to Contest Liability. Pursuant to the stipulation, "[n]o evidence of . . . [t]he acts or omissions of the pilots or flight attendants of Flight 815 or any other employee or agent of US Airways, Inc." shall be introduced or mentioned at trial. *Id.* at 2. Thus plaintiff is already precluded from using information related to the acts or omissions of the flight attendants—the very basis upon which the Court holds that the flight attendants are represented parties under Rule 4.2—against US Airways. US Airways has therefore failed to demonstrate that sanctions are necessary to avoid

12

prejudice. *Mcdevitt v. Verizon Servs. Corp.*, No. CV 14-4125, 2016 WL 1072903, at *5 (E.D. Pa. Feb. 22, 2016), report and recommendation adopted, No. CV 14-4125, 2016 WL 1056702 (E.D. Pa. Mar. 17, 2016) (declining to sanction counsel for a "technical violation" of the Rules of Professional Conduct where no prejudice resulted from the *ex parte* communication). Moreover, according to the ABA Standards for Imposing Lawyer Sanctions, with respect to *ex parte* communications, "[a]dmonishment is generally appropriate when a lawyer engages in isolated instances of negligence in improperly communicating with individuals in the legal system, and causes little or no actual or potential injury to a party, or causes little or no actual or potential interference with the outcome of the legal proceeding." ABA Standards for Imposing Lawyer Sanctions, Ex. 4, at § 6.34. US Airways did not allege or provide evidence of repeated violations by Brodkowitz and it suffered no actual injury as a result of the *ex parte* communication.

Under the circumstances, revocation of Brodkowitz's *pro hac vice* admission is not an appropriate sanction. However, the Court concludes that admonishment for violating Rule 4.2 is warranted. This Memorandum constitutes such admonishment.

V. **CONCLUSION**

For the foregoing reasons, US Airways' Motion for Sanctions is denied. An appropriate order shall issue.